COMMONWEALTH *vs.* WILLIAM J. SWENSON.

Suffolk.    March 3, 1975. — June 30, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Identification. Evidence,* Of identification, Contradiction of witness, Informer privilege. *Practice, Criminal,* Exceptions: failure to save exception, Access to witnesses, Appeal. *Constitutional Law,* Due process of law.

At a trial for armed robbery, where a prosecution witness made no in-court identification of the defendant and refused to affirm that he had made a prior extrajudicial photographic identification, the judge properly permitted a police officer to testify for purposes of impeachment that the witness had made a prior photographic identification. [271-274]

At a trial for armed robbery in a bar, the refusal of the judge to order disclosure of the identity of a police informer, who was by chance an eyewitness, was not error where the defendant saved no exception at the trial, the record revealed no injustice to the defendant from the failure to order disclosure, and the defendant did not show that an exception to the usual privilege permitting informer anonymity was necessary to aid the defense. [275-278]

A defendant convicted of armed robbery was not denied due process of law contrary to the Fourteenth Amendment to the United States Constitution by a delay of three and one-half years between his claiming of and the docketing of his appeal, which the defendant asserted prevented his reconstructing from memory alleged unfounded, prejudicial, unrecorded closing arguments of the prosecutor, where the delay was not attributable to dilatory tactics on the part of the Commonwealth, no objection was made to the closing remarks at the trial, and the defendant failed to establish substantial prejudice. [278-280]

INDICTMENT found and returned in the Superior Court on May 15, 1969.

The case was tried before *Frank E. Smith*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William A. Nelson* for the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, J.   Following a joint trial with a codefendant, one George Abbott, the defendant was convicted of the crime of armed robbery and sentenced to a term of not less than twelve nor more than fifteen years at the Massachusetts Correctional Institution at Walpole. The guilty verdict was rendered on June 11, 1970. The case had been tried under the provisions of G. L. c. 278, §§ 33A-33G, and an appeal was filed on June 19, 1970. However, no assignments of error were filed and on May 24, 1971, a Superior Court judge dismissed the appeal as not having been perfected.[1]

The defendant filed a petition for writ of error before a single justice of this court and on January 22, 1974, judgment was entered by order of the single justice reinstating the defendant's appellate rights under §§ 33A-

---

[1] Motions for a new trial were heard and denied in February, 1972; an appeal which had been filed with the Appellate Division was withdrawn.

33G.   The defendant was directed to file his assignment of errors; he did so, setting forth nine assignments.   The appeal was filed in the Appeals Court and we on our own motion ordered that the case be transferred here. In oral argument the defendant waived six of his assignments of error.   He argues before us (1) error in that the trial judge permitted a police officer to testify as to an extrajudicial photographic identification by a witness where that witness on the stand made no in-court identification and refused to confirm the prior identification; (2) error in that the trial judge refused to order disclosure of the identity of a police informer who had witnessed the robbery and had provided the defendant's name to the police; and (3) error in that the three and one-half year delay between the claiming of, and docketing of, this appeal caused the defendant substantial prejudice to his appellate rights.   We find no error.

Evidence was offered that at about 10 or 10:30 P.M. on June 4, 1968, a man armed with a rifle entered Captain Bill's Cafe, Inc., on Dudley Street, in Roxbury, and announced that the place was going to be robbed. Anthony M. Bevere, the bartender on duty, testified that he was at the time standing behind the bar.   While the man with the rifle remained at the door a customer, Warren Clark, walked in.   At first Clark was not aware that a robbery was in progress.   When he realized that fact, Clark attempted to grab the rifle but the robber struck him with it.   His attention apparently having been diverted by this scuffle, Bevere, at this point, became aware of a second man standing behind him.   That man placed a hand gun against Bevere's side, ordered Bevere to open the cash register and to empty the cash into a cigar box.   The gunman stood behind him and, when Bevere finished collecting the money, the gunman ordered him to the far end of the bar.   The man with the hand gun who had been next to Bevere left first; the man with the rifle left a minute later.   The police arrived about a half-hour later.   Sometime later that

night the police returned, bringing with them ten or eleven photographs, among which was a photograph of the defendant Swenson.

1. The extrajudicial identification of a photograph of the defendant by Bevere presents one of the issues in this case. At trial Bevere was unable or unwilling to make an in-court identification of the defendant as the man who had held the gun, although Bevere did identify the codefendant as the man with the rifle. Bevere was asked, "Did you identify one of those photographs as the man that held you up?" He first answered, "No, I indicated there was probably—." Over objection that the question called for a direct answer, Bevere said, "No." He was then questioned as to an identification of the codefendant at the preliminary hearing, which he affirmed. A second question as to the photographic identification of the defendant was then repeated, "Just one more question, Mr. Bevere. You want to leave for the record and to this jury you identified no photograph on June 4 or June 5, 1968?" Bevere answered, "I did not give a positive identification of any photograph."

On redirect examination Bevere was shown a photograph, presumably of Swenson, and was asked whether he had been shown that photograph on June 4, 1968. Bevere answered, "Yes, I was." He was then asked whether he did identify that photograph at the time. In the colloquy which followed, defense counsel objected, apparently on the ground that any statement in response would be hearsay. The objection was overruled, subject to exception, and the witness testified, "I thought it resembled the man with the rifle."[2] This statement following the prior denials is the closest Bevere came

---

[2] The reference to the man with the rifle was apparently a verbal slip for it is clear from the context of the questioning that the parties were speaking of the man with the gun, not the man with the rifle. Indeed, in the very next question counsel for the codefendant Abbott, accused of holding the rifle, clarified the error.

to admitting that he made any extrajudicial identification of the defendant Swenson.

The next witness was Stephen Flaherty, a police officer. Flaherty testified that on the night of the robbery he had returned with photographs to show Bevere, among others. Flaherty was asked whether he had shown the previous witness Bevere the photographs; he answered yes. The assistant district attorney then stated, "Your Honor, I offer this as [a] prior inconsistent statement on behalf of the last witness." Following a bench conference, not recorded, Flaherty testified that when he had shown Bevere the photographs, Bevere had shuffled through them and had picked out Swenson's picture. Flaherty further testified that Bevere had said, "That looks like the guy that held the handgun."

The defendant argues that it was error to allow Officer Flaherty's testimony as to Bevere's alleged identification of the defendant's photograph. We disagree.

There are at least three ways in which proof of an extrajudicial identification may be offered in evidence: (1) for corroborative purposes; (2) for impeachment purposes where that prior identification may have been disclaimed; or (3) as substantive evidence of an identification, having probative value. The Commonwealth seeks to justify the admission of the testimony at issue here, not for substantive purposes, but for corroborative or impeachment purposes.[3]

---

[3] The Commonwealth makes no argument that the testimony of Officer Flaherty was offered for substantive purposes. Thus, this is not a case where despite an inability or unwillingness to make an in-court identification, the prior extrajudicial identification was offered for its probative value. As we discussed in *Commonwealth* v. *Torres*, 367 Mass. 737, 739 (1975), there appears to be a split of authority on the issue whether such an extrajudicial identification may have independent probative value. However, as we noted in the *Torres* case, "The trend of decisions is to permit such evidence to be introduced." That result seems reasonable, particularly where the witness, because of the time lapse before trial, is unable to make an

We do not agree with the Commonwealth's contention that Flaherty's testimony was admissible as corroborative of Bevere's prior photographic identification. It is true, as the defendant concedes, that it is a well established principle in this Commonwealth that the testimony of witnesses to an extrajudicial identification may be admissible to corroborate an in-court identification or to corroborate the circumstances of the making of an extrajudicial identification. See, e.g., *Commonwealth* v. *Locke,* 335 Mass. 106 (1956); *Commonwealth* v. *Redmond,* 357 Mass. 333, 341 (1970); *Commonwealth* v. *Leaster,* 362 Mass. 407 (1972); *Commonwealth* v. *Denault,* 362 Mass. 564 (1972). However, while the Commonwealth now seeks to support admission of Officer Flaherty's testimony on the ground that it is corroborative, it is clear that the testimony was expressly not offered for this purpose at trial. Indeed, given what may be characterized at best as an equivocal identification and at worst as a disaffirmance of any identification by Bevere, and given the absence of an in-court identification, it is unlikely that the police officer's testimony could properly have been offered for corroborative purposes.

---

in-court identification but clearly recollects having positively identified the defendant earlier. See authorities cited in the *Torres* case, *supra,* at 739-740. See generally cases collected in anno. 71 A. L. R. 2d 449 (1960), and Later Case Service, 499 (1967). For a particularly useful discussion, see *People* v. *Gould,* 54 Cal. 2d 621 (1960); *State* v. *Fennell,* 7 Ore. App. 256 (1971).

If the police officer's testimony had been offered for substantive purposes in the instant case, we would be faced with an even more difficult issue, since it can be said here that the witness Bevere not only declined to make an in-court identification, but also disclaimed having made an extrajudicial identification. In such a case, the evidential value of the prior identification is almost completely dissipated. *Gibbs* v. *State,* 7 Md. App. 35 (1969). Moreover, the constitutional right to confront one's accusers may be implicated in this situation. Cf. *Douglas* v. *Alabama,* 380 U. S. 415, 419-420 (1965); *California* v. *Green,* 399 U. S. 149, 192-194 (1970) (Brennan, J., dissenting). See also *Commonwealth* v. *Torres, supra,* at 739-740, n. 2.

As the record clearly indicates, the testimony of Officer Flaherty was offered for impeachment purposes, and properly so, we believe. Cf. *Commonwealth* v. *Thompson*, 362 Mass. 382 (1972). Bevere was an important witness to the Commonwealth; he stood closest to the gunman for most of the time the two robbers were in the bar and moved in response to orders directed at him by that gunman. Bevere's testimony, taken as a whole, could be interpreted to mean that he had not at any time positively identified the defendant as the gunman. The Commonwealth was entitled to impeach this witness's testimony, tending as it did to exculpate Swenson.[4]

Counsel for the defendant did not request limiting instructions to the jury either at the point that the police officer's testimony was offered or in the judge's final instructions to the jury. The assistant district attorney clearly and in the presence of the jury stated that the testimony was offered as a prior inconsistent statement. Had the defendant sought further elaboration of this evidentiary principle for the benefit of the jury, he should have requested instructions. The duty was with defense counsel.[5] *Commonwealth* v. *Costa*, 354 Mass. 757 (1968). *Commonwealth* v. *Foley*, 358 Mass. 233 (1970). *Commonwealth* v. *Concepcion*, 362 Mass. 653 (1972).

---

[4] We note that in addition to Bevere's testimony, one customer present during the robbery identified Swenson at the trial as one of the robbers, and a second eyewitness testified in court that Swenson resembled the robber and also testified as to a prior photographic identification made by him.

[5] We have reviewed the defendant's argument that the statements of Officer Flaherty were improperly admitted for impeachment purposes due to a failure to comply with G. L. c. 233, § 23, which defines the prerequisites to be met before one may impeach one's own witness. We believe the statute was satisfied and the defendant's claim to the contrary is without merit. See *Goodney* v. *Smith*, 354 Mass. 734 (1968); *Commonwealth* v. *LaFrance*, 361 Mass. 53, 57 (1972). The assistant district attorney brought to the attention of the witness both on direct examination and cross-examination the circumstances of the June 4, 1968, photographic identification.

2. In his second assignment of error, the defendant argues that the trial judge improperly refused to order disclosure of the identity of a police informer. It was brought out in evidence during cross-examination of Officer Flaherty by the defendant that the police had originally included the defendant's photograph among those to be shown on the night of the robbery to the witnesses still at the bar because of information, in fact the defendant's name, given to the police by an informer who apparently had been present in the bar during the robbery.

The defendant, citing *Roviaro* v. *United States*, 353 U. S. 53 (1957), and particularly relying on the case of *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499 (1973), argues that the Commonwealth was required to divulge the identity of its informer. There was no error.

This assignment of error fails because the defendant saved no exception, as to this issue, at trial. Indeed, the colloquy between counsel and court was casual and not particularly calculated to focus the issue.[6]

Nor do we think that this is a case where we should act, as we have in a few instances, even though the defendant saved no exception. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967); *Commonwealth* v. *Foley*, 358 Mass. 233 (1970); *Commonwealth* v. *Underwood*, 358 Mass. 506, 510 (1970); *Commonwealth* v. *Concepcion*, 362 Mass. 653 (1972). We reach this conclusion because the record reveals no injustice resulting from the failure to require disclosure of the informer's identity.[7]

---

[6] The colloquy was as follows: COUNSEL FOR THE DEFENDANT: "I would ask, your Honor, at this time that I be allowed to summons him in." THE COURT: "Well, I can't stop you if you want to summons him in." COUNSEL FOR THE DEFENDANT: "I think, your Honor, we should have his name." COUNSEL FOR THE PROSECUTOR: "I object to the giving of his name." THE COURT: "Commonwealth is not obliged to disclose the name of the informer."

[7] We also consider that the failure by defense counsel to assert his position more aggressively may not have been mere oversight, but a

While we have said that there is "no requirement that a defendant, denied access to evidence that might prove helpful in his defence, must make a specific showing of just what the evidence would have proved and how far he was prejudiced by the withholding," (*Commonwealth v. Johnson*, 365 Mass. 534, 547 [1974]), it would seem only reasonable that a defendant seeking disclosure of an informer's identity make some offering so that the trial judge may assess the materiality and relevancy of the disclosure to the defense, if that relevancy is not apparent from the nature of the case and the defense offered thereto. In other words, the defendant has some obligation to show an exception to the privilege that the informer remain anonymous, since the privilege is meant to encourage "'every citizen' in his 'duty . . . to communicate to his government any information which he has of the commission of an offense against its laws.' *Worthington v. Scribner*, 109 Mass. 487, 488 (1872)," quoted in *Commonwealth v. Ennis*, 1 Mass. App. Ct. 499, 501 (1973). Certainly the trial judge is charged with the duty of protecting a defendant's rights. However, the judge is not a seer who can forecast the scheme of the defense and in many cases, such as this one, he cannot be required to assess the need for disclosure, or to balance the respective interests as the defendant suggests, without some guidance by defense counsel.[8]   See generally cases cited

---

tactical choice by counsel based on his judgment that the informer's testimony, instead of being helpful to the defendant, would lend additional support to the Commonwealth's case. Cf. *Commonwealth v. Underwood*, 358 Mass. 506, 509-511 (1970); *Commonwealth v. Garvin*, 448 Pa. 258, 267-268 (1972).

[8] *Commonwealth v. Ennis*, 1 Mass. App. Ct. 499 (1973), the case relied on by the defendant, is not inconsistent with this reasoning, for in that case "defense counsel indicated that the nature of the defense would disclose the need for [the informer's] identity." *Id.* at 500. Moreover, the need for disclosure was readily inferable in the *Ennis* case since the informer was the only other person present at the sale of narcotics and, indeed, had allegedly arranged the sale.

in anno. 76 A. L. R. 2d 262, §§ 13, 14 (1961), and Later Case Service, 425, 437-439 (1975).

In this case the defendant made no representation to the trial judge that he would be prejudiced by want of the informer's name or that the identity thereof would be of some benefit in preparing his defense. It is only when this burden is met that the balancing test of the *Roviaro* case, wherein the respective interests of the prosecution in nondisclosure and the defendant in marshaling a defense are weighed, comes into play. See *Roviaro* v. *United States,* 353 U.S. 53, 61-62 (1957). This record does not enable us, nor did it enable the trial judge, to weigh meaningfully the respective interests at stake.

Counsel for the defendant did bring out in cross-examination that the informer had been an eyewitness to the robbery, i.e., that the informer was in the bar on the night in question. Yet there is no allegation that this was more than coincidence, nor was there any evidence brought out that the informer had prior knowledge of, or was in any sense a participant in the robbery. In short, there was nothing to indicate that the informer's identity would be of any assistance in proving the defendant innocent.

As a general proposition, we agree with the defendant that the fact that an informer is an eyewitness to the crime weighs heavily in favor of disclosure. *Lopez-Hernandez* v. *United States,* 394 F. 2d 820, 821 (9th Cir. 1968). *United States* v. *Barnes,* 486 F. 2d 776, 778-779 (8th Cir. 1973). Cf. *United States* v. *Skeens,* 449 F. 2d 1066, 1070 (D. C. Cir. 1971) (dictum). "But this is not to say that physical presence at the scene of the alleged crime is conclusive." *Miller* v. *United States,* 273 F. 2d 279, 281 (5th Cir. 1959), cert. den. 362 U. S. 928 (1960). However, in the instant case there were countervailing factors. The informer apparently had no part in the crime but merely supplied the police with information used in their investigation. Also, the informer was not called to testify by the Commonwealth and played no

part in the Commonwealth's case in chief. That an informer existed at all was brought out by the defense. For cases not requiring disclosure in these circumstances, see, e.g., *Miller* v. *United States, supra; United States* v. *Skeens,* 449 F. 2d 1066 (D. C. Cir. 1971); *United States* v. *Alvarez,* 472 F. 2d 111 (9th Cir. 1973), cert. den. 412 U.S. 921 (1973); *People* v. *Goggins,* 34 N. Y. 2d 163 (1974), cert. den. 419 U. S. 1012 (1974).

We think that, had the defendant conscientiously desired the informer's identity, he should have made some effort to develop on the record his reasons for seeking disclosure. As with the failure to save an exception, this lack of directed inquiry into the role played by the informer may have been a tactical choice on the part of the defense. Involving as it does an informer-eyewitness, the requirement of disclosure might have been a close issue in this case had defense counsel pursued the matter. He did not, and we are unable to discern prejudice on the evidence before us.

In sum, we find no error in the failure to require disclosure. First, there was no assertion or preservation of rights through the claiming of an exception; indeed, we cannot discern even an objection or relevant motion in the record. Second, the defendant at trial made no effort to show that the identity of the informer was sought in order that the defendant could prepare his defense. The statement in *Rugendorf* v. *United States,* 376 U. S. 528, 535 (1964), is apt in this case: "Having failed to develop the criteria of *Roviaro* necessitating disclosure on the merits, we cannot say on this record that the name of the informant was necessary to his defense. . . . Never did petitioner's counsel indicate how the informants' testimony could help establish petitioner's innocence." See generally *Scher* v. *United States,* 305 U. S. 251 (1938); *McCray* v. *Illinois,* 386 U. S. 300 (1967).

3. As a final assignment of error the defendant argues that he has been substantially prejudiced by the three

and one-half year delay[9] between the claiming of and the docketing of his appeal. The prejudice asserted is that the assistant district attorney in his closing argument improperly, and without any basis in evidence, suggested that the defendant had threatened or intimidated witnesses so that they recanted prior statements and identifications. The closing arguments were not recorded and the defendant argues that, but for the three and one-half year delay, the arguments might have been reconstructed from memory, thus disclosing the prejudicial remarks.

The defendant concedes that *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693 (1974), held that delay in the appellate process did not generally amount to a denial of due process, but he urges that his case is distinguishable from the *Dominico* case because of the prejudice suffered and that, therefore, reversal is required here.

We agree with the Appeals Court that the Federal cases cited in *Dominico* and repeated in the defendant's brief before us (see e.g., *Jones* v. *Crouse,* 360 F. 2d 157, 158 [10th Cir. 1966]; *Odsen* v. *Moore,* 445 F. 2d 806, 807 [1st Cir. 1971]; but see *Way* v. *Crouse,* 421 F. 2d 145, 147 [10th Cir. 1970]; *United States* ex rel. *Senk* v. *Brierley,* 471 F. 2d 657, 660 [3d Cir. 1973]), do not "carve out a new constitutional right to a speedy appeal." *Commonwealth* v. *Dominico, supra,* at 722. However, specific circumstances not present here, such as deliberate blocking of appellate rights or inordinate and

---

[9] A special master was appointed to take evidence on a petition for a writ of error filed with the county court. The master found that the delay in bringing the appeal was due to trial counsel's neglect. The defendant moved before the single justice of the Appeals Court to have the master's report made a part of the record; the motion was denied "without prejudice to raising the same issue before the panel of Justices before whom the case is argued." The motion was renewed in oral argument before the full court. We grant the motion, and have considered the master's report as part of the record before us.

prejudicial delay without a defendant's consent, may rise to the level of constitutional error.

We note that the delay in perfecting this appeal is not attributable to dilatory tactics on the part of the Commonwealth. Furthermore, we do not believe that the defendant has met the burden of establishing the substantial prejudice he asserts, nor has he shown other harm in this case. From the transcript it appears that no objection was made to the closing arguments at the time of trial. We are justified in assuming that any such objection would have been recorded despite the absence of transcription of the closing statement.[10] As we stated in *Commonwealth* v. *Bottiglio*, 357 Mass. 593, 597 (1970): "It was incumbent upon Bottiglio as the appealing party to put enough in the record pertinent to the point to enable us to decide it without resort to speculation."

*Judgment affirmed.*

---

[10] While we have rejected the defendant's argument as to substantial prejudice, we think that this case illustrates the hazards of leaving closing arguments unrecorded. Absent some compelling reason for excusing the stenographer, it would appear to be the better practice for the trial judge to ensure that the entire proceeding is on the record.