COMMONWEALTH *vs.* BRUCE BOOKMAN.

Bristol. March 2, 1982. — June 30, 1982.

Present: HENNESSEY, .C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence,* Admissions and confessions, Hearsay, Record of past knowl-
edge, Testimony before grand jury, Prior inconsistent statement. *Con-
stitutional Law,* Admissions and confessions, Waiver of constitutional
rights. *Waiver. Homicide. Arrest. Grand Jury.*

At the trial of an indictment charging manslaughter, there was no error in
the denial of the defendant's motion to suppress certain statements
made by him at a police station where the record was devoid of any
suggestion of coercion by the police or involuntariness on the part of
the defendant when he accompanied the police to the· station.
[659-661]
At a criminal trial, the judge erred in admitting a portion of a prosecution
witness's grand jury testimony under the "past recollection recorded"
exception to the hearsay rule where the witness neither saw or adopted
the grand jury transcript as being accurate at or about the time of the
events, nor prepared a memorandum of her prior statement or adopt-
ed such a memorandum made by another when the events were fresh
in her mind. [662-665]

INDICTMENT found and returned in the Superior Court
Department on May 29, 1979.

The case was tried before *McGuire,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Harry Bello* for the defendant.

*Lance J. Garth,* Assistant District Attorney (*Phillip L.
Weiner,* Assistant District Attorney, with him) for the Com-
monwealth.

LIACOS, J. The defendant was convicted by a jury of
manslaughter. He was sentenced to a term of seven to ten
years at the Massachusetts Correctional Institution, Walpole.
He appealed. The execution of sentence was stayed by the

trial judge, pending the appeal. The appeal is here on our motion. We reverse the judgment of conviction.

The victim, Jesse Aranjo, was found dead in a dugout at Dias Field, New Bedford, in the early afternoon of May 25, 1979. The cause of death was damage to the brain resulting from blunt force injury to the head. An examination of the victim's body revealed additional multiple bruises and abrasions.

The facts relevant to the appeal are these.[1] Two New Bedford police officers, on the morning following the incident, were instructed by one of their superior officers to pick up the defendant and bring him to the station for questioning. The officers proceeded to the defendant's home where they told the defendant's mother that they wanted to speak with the defendant. When the defendant appeared, the officers asked if he would go with them to the police station. Initially, the defendant made no response, but then asked if a companion, Keith Tavares, could go along. The officers replied that he could, and all four went to the police station.

When they arrived at the police station, the defendant was escorted to an interrogation room where he was advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The defendant indicated that he understood his rights and signed a form to that effect, but refused to sign a waiver of his Miranda rights. The defendant was then asked to explain his whereabouts on May 24, 1979.[2] The defendant made a statement to the police as follows. At about five or six o'clock on the evening of May 24, the defendant went over to a friend's house where he met Keith and David Tavares. After a while, the three proceeded to a liquor store where Keith purchased beer, vodka, and orange juice. The

---

[1] A more complete statement of the facts pertaining to the homicide is found in *Commonwealth* v. *Tavares,* 385 Mass. 140 (1982).

[2] At this time, the police had information that the defendant and two others puchased certain alcoholic beverages on the evening of May 24, 1979. Empty bottles of the type of beverage the defendant and his two companions purchased were found in the dugout at Dias Field.

three young men consumed these beverages in a dugout at Dias Field. According to the officers, Bookman stated that as the three of them left the field, they saw some men approaching, whom they did not know. The three youths returned to their friend's house, where they stayed until they took a taxicab home.

At this point, a third police officer entered the interrogation room and advised those present that David Tavares had confessed to the homicide and had implicated Keith Tavares and the defendant Bookman.[3] When the defendant was confronted with this information, he stated that he did not wish to give any further statement and requested an attorney. The defendant made no further statements.[4] The defendant argues on appeal that the judge erred in denying his motion to suppress the statements he made at the police station.

The judge found that there was no probable cause to arrest the defendant at the time the police officers went to his home. The judge further found that, prior to the break in questioning, the defendant was not under arrest, in custody, subject to custodial interrogation, or deprived of his freedom in any significant way. The defendant, however, relying primarily on *Dunaway* v. *New York*, 442 U.S. 200 (1979), contends that the defendant was, in fact, arrested

---

[3] Keith Tavares was convicted by a jury of murder in the second degree. See *Commonwealth* v. *Tavares, supra* at 159. In *Commonwealth* v. *Tavares, supra* at 157-159, we exercised our powers under G. L. c. 278, § 33E, to reduce the conviction of David Tavares from murder in the first degree to murder in the second degree.

[4] The trial judge found that, prior to the interruption in questioning, the defendant made no incriminating statements. Although the defendant did not confess to the crime charged, the defendant admitted being in the precise area where the victim was found, with at least one person who later confessed to the crime. Further, the defendant admitted going to a liquor store with two others, where one purchased beverages similar to those indicated by the empty containers which were found at the scene. These statements qualify as admissions because, together with proof of other facts, the statements aid in establishing the defendant's guilt. See *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957). Cf. *Commonwealth* v. *Tavares, supra* at 150-151 (extending "humane practice" to admissions as well as to confessions).

when the police picked him up and escorted him to the police station.

This case is factually distinguishable from *Dunaway* v. *New York, supra,* in one significant detail, viz., the defendant in *Dunaway* did not voluntarily accompany the detectives to police headquarters. See *Dunaway* v. *New York, supra* at 205, 207 & n.6. In the case before us there was no testimony in the motion hearing that even alluded to a finding of involuntariness in the defendant's accompanying the police to the station. The judge, in his rulings of law, stated that the defendant "was not forced to accompany the police [to the station] in the first place." The judge's conclusion that the defendant accompanied the officers voluntarily, and not under constraint, is well supported. The detectives asked the defendant if he would accompany them to the police station for questioning relative to the death of a young man in the north end of the city. The defendant and his friend rode in the back seat of the cruiser to the station. The defendant was not handcuffed or restrained in any way but walked into the police station on his own accord. A police officer read to the defendant his Miranda warnings, and the defendant knowingly and voluntarily waived his rights and proceeded to relate his whereabouts on the evening of May 24, 1979.

We recognize that there is a particular coercive element inherent in an interview at a police station. *Commonwealth* v. *Alicea,* 376 Mass. 506, 513 (1978). "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon* v. *Mathiason,* 429 U.S. 492, 495 (1977) (per curiam). Although an interview at an official place intimates a degree of coercion, see *Commonwealth* v. *Haas,* 373 Mass. 545, 552 (1977), it does not, in itself, brand an interrogation as custodial. *Commonwealth* v. *Best,* 381 Mass. 472, 493-494 (1980). The giving of Miranda warnings may be understood as a step taken by the police out of

abundant caution to counteract the particularly coercive atmosphere and does not, by itself, establish a custodial interrogation. *Commonwealth* v. *Alicea, supra.* We emphasize, however, that "[t]he situation would have been clearer if the officers had told the defendant that he was free to go on his way if he chose." *Commonwealth* v. *Meehan,* 377 Mass. 552, 558 (1979). See, e.g., *Oregon* v. *Mathiason, supra* at 493; *Commonwealth* v. *Doyle,* 12 Mass. App. Ct. 786, 791 (1981). Cf. *Commonwealth* v. *Best, supra* at 492-493. The record in this case is totally devoid of any suggestion of coercion by the police or involuntariness on the part of the defendant. Indeed, there is nothing to suggest that the defendant expressed even the slightest reservation about accompanying the officers. Compare *Commonwealth* v. *Haas, supra* at 549-554, with *Commonwealth* v. *Alicea, supra* at 508-514, and *Commonwealth* v. *Cruz,* 373 Mass. 676, 682-685 (1977).[5] There was no error in the denial of the motion to suppress.[6]

---

[5] The defendant does not argue that, assuming he was not under arrest, he was in a custodial interrogation situation where Miranda warnings were required. The defendant, however, disputes the judge's finding that the defendant waived his Miranda rights, but only in the context of arguing that the giving of Miranda warnings did not purge the taint of an illegal arrest. See generally *Brown* v. *Illinois,* 422 U.S. 590 (1975). There was no arrest, legal or illegal, in the case at bar. We consider, however, the issue whether admission of the defendant's statement violated his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

We agree with the trial judge that, although the defendant was questioned at the police station, the defendant was not deprived of his freedom in any significant way. Therefore, the defendant was not undergoing custodial interrogation, and compliance with Miranda procedures was not required. See *Miranda* v. *Arizona, supra* at 444. The police were in an investigative stage of the proceeding, and the defendant was free to leave the police station if he so desired. There is no evidence that the statements were made involuntarily or that the police threatened or coerced the defendant in any manner during the questioning.

[6] The ultimate findings of fact and rulings as they bear on issues of constitutional dimension are open for reexamination by this court; the judge's findings, however, are entitled to substantial deference by this court. *Commonwealth* v. *White,* 374 Mass. 132, 138 (1977), aff'd by an equally divided court, 439 U.S. 280 (1978). Our appellate function requires that we make an independent determination on the correctness of the judge's

The defendant claims a second error in the trial of his case. The defendant contends that the trial judge erred in admitting certain hearsay statements over his objection. We agree that the admission of hearsay evidence was in error and that the prejudicial impact thereof requires that the defendant be granted a new trial.[7]

At trial, a witness for the Commonwealth testified that she was unable to recall certain testimony that she had previously given before a grand jury. The judge declared the witness hostile and permitted the prosecutor to read to the jury, as substantive evidence of the defendant's guilt, a portion of the witness's grand jury testimony.[8] The testimony read to the jury contained a statement that the defendant made regarding the victim Aranjo: "He said, 'We didn't mean to do it. It was an accident. We didn't know the guy was dead until this news came on.'" The defendant objected to the admission of the evidence on the ground that the evidence was inadmissible hearsay.[9] The prosecutor argued,

"application of constitutional principles to the facts as found." *Brewer* v. *Williams,* 430 U.S. 387, 403 (1977), quoting from the separate opinion of Justice Frankfurter in *Brown* v. *Allen,* 344 U.S. 443, 507 (1953). See *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977). Adhering to this standard, we see no sufficient basis for interfering with the findings and conclusion of the judge.

[7] Other than the defendant's own admissions regarding his activities on the night of the homicide that circumstantially link him to the crime, there was no other direct evidence of the defendant's guilt.

[8] The judge properly allowed the prosecutor to use the grand jury minutes, as well as a police report that embodied the witness's prior statement, to refresh the witness's recollection. Here, the witness testified that she had some memory of the event in question, but was unable to recollect particular statements allegedly made by the defendant in her presence. After such testimony, it was proper to attempt to refresh her recollection by such means. The permissible evidence, in such an instance, however, is the revived testimony of the witness, not the memorandum used to refresh recollection. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 376 (1978), and cases cited therein. Cf. G. L. c. 233, § 23; *Commonwealth* v. *Reddick,* 372 Mass. 460, 462-463 (1977).

[9] The defendant also argued at trial that the defendant's constitutional right to confront the witness against him was violated by the admission of the witness's grand jury testimony because the defendant was unable to

and the judge ruled, that the prior statement of the witness was admissible under the past recollection recorded exception to the hearsay rule. We disagree.

We do not disturb the well-established rule in this Commonwealth that a witness may incorporate past recollection recorded in his testimony, or, in the discretion of the judge, the memorandum may be admitted in evidence as an exception to the hearsay rule. See *Commonwealth* v. *Dougherty*, 343 Mass. 299, 306 (1961); *Fisher* v. *Swartz*, 333 Mass. 265 (1955); *Commonwealth* v. *Greene*, 9 Mass. App. Ct. 688, 689-691 (1980). Under this exception to the hearsay rule, where a witness has no revivable recollection of an event, a memorandum recording those events may qualify, providing certain conditions are met, as evidence. See generally 3 J. Wigmore, Evidence §§ 744-755 (Chadbourn rev. 1970). Cf. Fed. R. Evid. 803(5); Proposed Mass. R. Evid. 803 (5) (July, 1980). Among the prerequisites of admissibility is the requirement that the witness, having firsthand knowledge of the facts recorded in the memorandum, be able to testify that the memorandum written or observed by him was true at the time it was made. As Wigmore puts it: "If the witness can say, 'I *distinctly* remember that when I made or saw this memorandum, *about the time of the events,* I was *then conscious* of its correctness,' his verification is satisfactory" (emphasis supplied). 3 J. Wigmore, *supra* at § 747(2). The requirements of Fed. R. Evid. 803(5) are similar: The memorandum must be "shown to have been made or adopted by the witness *when the matter was fresh in his memory* and to reflect that knowledge correctly" (em-

cross-examine the witness's testimony before the grand jury. See *Commonwealth* v. *Canon*, 373 Mass. 494, 509 (1977), (Liacos, J., dissenting), cert. denied, 435 U.S. 933 (1978). Because we conclude that the proffered evidence was inadmissible in the first instance under State evidentiary law, we need not reach the issue whether the defendant's opportunity to cross-examine the witness, who claimed a memory lapse at the trial, is constitutionally sufficient. See *California* v. *Green*, 399 U.S. 149, 168-169 (1970). See generally *People* v. *Johnson*, 68 Cal. 2d 646, 655-656 (1968), cert. denied, 393 U.S. 1051 (1969) (discussing ineffectiveness of belated cross-examination).

phasis supplied). Our cases seem generally in accord. See, e.g., *Parsons* v. *Manufacturers Ins. Co.*, 16 Gray 463 (1860). See also *Gurley* v. *Springfield St. Ry.*, 206 Mass. 534, 538 (1910).

Even if we assume grand jury testimony may be admissible in a criminal case under this doctrine, the admission of this evidence was error in this case. There was no evidence that the witness ever saw or adopted the grand jury transcript as being accurate at or about the time of the events. Nor did the judge so find. Cf. *Commonwealth* v. *Greene, supra* at 690-691 (witness testified statement was true at time made and recorded; evidence admissible even though witness would not attest to memorandum's truth at time of trial). In the instant case, the witness did not prepare a memorandum of her prior statement, nor was a memorandum of her statement made by another adopted by the witness *when the events were fresh in her mind.* We do not view her equivocal testimony at trial as being an adequate verification of the truthfulness of the statements she made to the grand jury.[10] Consequently, the evidence was inadmissible under the past recollection recorded exception to the hearsay rule.[11] We note that we have been generally skeptical as to the admissibility of grand jury minutes as probative evidence. *Commonwealth* v. *Martinez*, 384 Mass. 377, 381-385 (1981) (grand jury testimony inadmissible as prior recorded testimony). *Commonwealth* v. *Meech*, 380 Mass. 490 (1980) (same). Whether grand jury testimony which qualified as a memorandum of past recollection recorded could be admitted as a matter of State law is a question as to

---

[10] The verification testimony at trial is summed up by this colloquy:

THE PROSECUTOR: "Is your answer: 'Yes, I told the truth to the grand jury'?"

THE WITNESS: "If that's what I said then; but right now I don't remember."

[11] We note that we are not called on here to rule on a theory of admissibility of the proffered evidence for its full substantive value as contained in Proposed Mass. R. Evid. 803 (d) (1) (A) (July, 1980). Cf. Fed. R. Evid. 801(d)(1)(A).

which we have serious doubt. We note that no case has been cited by the Commonwealth which allows a grand jury transcript to qualify as past recollection recorded. Cf. *Commonwealth* v. *Fiore*, 364 Mass. 819, 823 (1974) (grand jury testimony may be used to refresh recollection of witness).

On appeal, the Commonwealth argues that the witness's prior statement was admissible under the prior inconsistent statement exception to the hearsay rule. Were the statement admissible as a prior inconsistent statement, however, the defendant would have been entitled to a limiting instruction that the evidence be considered only for impeachment purposes. See, e.g., *Commonwealth* v. *Balukonis*, 357 Mass. 721, 726 (1970). Thus, we conclude that unfairness would result if we accepted the Commonwealth's argument for the first time on appeal. As so aptly stated by Justice Cardozo, "A trial becomes unfair if testimony thus accepted may be used in an appellate court as though admitted for a different purpose, unavowed and unsuspected." *Shepard* v. *United States*, 290 U.S. 96, 103 (1933).

The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial.

*So ordered.*