COMMONWEALTH *vs.* DENNIS M. DAYE.

Suffolk.  June 10, 1983. — September 26, 1983.

Present: HALE, C.J., CUTTER, & SMITH, JJ.

*Identification.  Evidence,* Identification, Testimony before grand jury,
   Testimony of third party respecting identification.  *Constitutional
   Law,* Confrontation of witnesses.

Where a witness at the trial of indictments arising from a shooting did not
   identify the defendant in court and denied that he had identified a
   photograph of the defendant as the person who had fired the shots, it
   was reversible error for the judge to permit testimony by a police offi-
   cer that, on the day after the shooting, the witness had identified a
   photograph of the defendant and to instruct the jury that they could
   consider that testimony as substantive evidence of the defendant's
   identity.  [647-649]
Where a witness at the trial of indictments arising from a shooting failed
   to identify the defendant in court as the gunman, but testified that
   while viewing a photographic array at a police station he had selected
   a photograph of the defendant as that of the gunman, there was no er-
   ror in admitting the witness's testimony, and that of a police officer,
   respecting the photographic identification as substantive evidence of
   prior identification of the defendant by the witness.  [649-650]
Where a witness at the trial of indictments arising from a shooting failed
   in court to identify the defendant as the gunman, and stated that his
   testimony before a grand jury, in which he identified the defendant,
   was exaggerated and inaccurate, the judge erred in admitting in evi-
   dence excerpts of the witness's grand jury testimony in which he identi-
   fied the defendant.  [650-652]

INDICTMENTS found and returned in the Superior Court
Department on May 6, 1980.

The cases were tried before *Roger J. Donahue,* J.

*Michael Laurano* for the defendant.

*Joshua D. Werner,* Assistant District Attorney, for the
Commonwealth.

SMITH, J.  The defendant was indicted for the crimes of assault with intent to murder, assault by means of a dangerous weapon, and unlawfully carrying a firearm.  He was tried in the Superior Court before a jury and convicted on the latter two indictments and, on the first indictment, of the lesser included offense of assault with intent to kill.  He appeals, contending principally that the admission of certain evidence on the issue of identity deprived him of a fair trial.[1]  We agree with certain of those contentions and reverse the convictions.

The indictments were returned as a consequence of events that occurred during the evening of April 24, 1980, outside an entrance to the Squeeze Inn, a tavern in the city of Revere.  Testimony at the trial indicated that the victim, who had been wrestling with another man on the sidewalk outside the tavern, was shot in the lower abdomen by a man who had emerged from the tavern, ordered the combatants to "go around the corner," and fired a shot from close range when the victim failed to heed his demand.  The gunman, after commenting to a companion that "[the victim] didn't listen," entered an automobile, and with his companion, left the scene.  There were numerous eyewitnesses to the incident.

The main issue at trial was the identity of the defendant as the gunman who had wounded the victim.  The Commonwealth endeavored to prove identity through the testimony of the victim and some seven eyewitnesses, all but one of whom proved either unwilling or unable on the stand to identify the defendant as the gunman.[2]

---

[1] In view of our disposition of this case, we need not address the defendant's remaining contentions of error, which involve issues that are unlikely to recur on retrial.

[2] The only eyewitness who (in court) identified the defendant as the gunman admitted on cross-examination that he had identified the defendant's companion as the gunman during a lineup several days after the shooting.  The victim and his fellow combatant made no in-court identification, but both testified that they, too, had previously identified the defendant's companion as the gunman.  Three other witnesses who, with varying degrees of incertitude, testified to prior identifications of the defendant's picture from among a photographic array, did not identify him

In an effort to shore up its deteriorating proof on the issue of identity, the Commonwealth elicited testimony from one eyewitness that he had identified the defendant, by name, as the gunman during grand jury proceedings. The Commonwealth also called two police officers from Revere to offer testimony concerning various out-of-court identifications made by certain of the eyewitnesses. The judge specifically instructed the jury that it could consider that testimony as substantive evidence of the defendant's identity as the gunman. It is upon the admissibility of that evidence for substantive purposes that we are asked to rule.

1. *Evidence of prior photographic identification.* (a) *Steven Ciambelli.* The Commonwealth called as a witness Steven Ciambelli, who testified that he had been present outside the tavern when the victim was shot. He was never asked to make an in-court identification of the defendant as the gunman. The prosecutor did elicit from Ciambelli an answer that he had viewed photographs for the purpose of identifying "men that I [had] seen on the corner that night" and that he had selected one or two photographs. Ciambelli, however, steadfastly denied that the photograph or photographs he had selected represented a positive identification of the gunman. Indeed, when asked if his purpose in viewing the photographs was to identify the gunman, Ciambelli responded, "No, I didn't know what he looks like."

Subsequently, and over defense counsel's objection, the prosecutor obtained from William Gannon, a Revere police officer, testimony that on the day following the shooting, and in Gannon's presence, Ciambelli had, from an array of twenty-five photographs, positively identified a photograph of the defendant as the gunman.

We conclude that it was error to admit the testimony of Officer Gannon, particularly in light of the judge's specific

in court. The remaining eyewitnesses called by the prosecution could make no identification implicating the defendant.

The uncertainty of the witnesses at trial necessarily leads us to believe that there may have been intimidation of witnesses from some source. If so, tracing that source is a matter for the prosecution to pursue.

instruction that the jury could consider that testimony as substantive evidence of the defendant's identity. See *Commonwealth* v. *Swenson,* 368 Mass. 268, 272 n.3 (1975); *Commonwealth* v. *Furtick,* 386 Mass. 477, 481 n.2 (1982); *Commonwealth* v. *Amado,* 387 Mass. 179, 188-189 (1982). While the admissibility, for substantive purposes, of third-party evidence of an out-of-court identification by a witness who disclaims that identification and also fails to make an in-court identification has never been decided in Massachusetts, the Supreme Judicial Court has considered the issue in each of the cited cases, leaving little doubt as to the inadmissibility of such evidence in a criminal trial. See, e.g., *Commonwealth* v. *Swenson, supra*: "If the police officer's testimony had been offered for substantive purposes . . . we would be faced with an even more difficult issue, since it can be said here that the witness . . . not only declined to make an in-court identification, but also disclaimed making an extrajudicial identification. In such a case, the evidential value of the prior identification is almost completely dissipated. *Gibbs* v. *State,* 7 Md. App. 35 (1969). Moreover, the constitutional right to confront one's accusers may be implicated in this situation [citations omitted]."

The Commonwealth's reliance on *Commonwealth* v. *Torres,* 367 Mass. 737 (1975), and *Commonwealth* v. *Fitzgerald,* 376 Mass. 402 (1978), is misplaced. In *Commonwealth* v. *Torres* the testimony of the victim concerning an identification of the defendant's voice during a prior hearing was held admissible for substantive purposes. But most important, that evidence was offered through the same witness who had made the prior identification, thereby preserving the defendant's right of cross-examination, *id.* at 739 n.2, and lending probative weight to the evidence of prior identification. Contrast *Commonwealth* v. *Amado, supra* at 188-189. Similarly, in *Commonwealth* v. *Fitzgerald, supra,* the witness, while unable to make an in-court identification, "affirmed that she had picked out photographs of [the defendants] . . . [and] could thus be cross-examined concerning her earlier identifications, and, in fact,

. . . was vigorously and thoroughly cross-examined. . . ." *Id.*
at 409. *Commonwealth* v. *Weichell,* 390 Mass. 62, 72
(1983).

By contrast, in the instant case the witness Ciambelli, on
the witness stand, denied having made a prior identification.
It is illogical to suggest that the mere fact of his presence on
the stand afforded the defendant a genuine opportunity to
cross-examine Ciambelli concerning an out-of-court identi-
fication he so unequivocally disclaimed. Wall, Eyewitness
Identification in Criminal Cases 161-162 (1965). Cf. *Com-
monwealth* v. *Swenson, supra* at 272 n.3. Further, while
assessing the credibility of evidence is ordinarily the prov-
ince of the jury, *Commonwealth* v. *Fitzgerald, supra* at
410, and authorities cited, there can be little probative
weight attributed to evidence of an identification offered
through a third-party observer to the identification which
the identifying witness, under oath, has disclaimed. See
*Gibbs* v. *State,* 7 Md. App. 35 (1969), as cited in *Common-
wealth* v. *Swenson, supra* at 272 n.3, and *Commonwealth*
v. *Amado, supra* at 188-189.

(b) *James O'Connor.* At trial, James O'Connor, another
eyewitness to the shooting incident, testified that he was un-
able to identify the gunman from among those people pres-
ent in the courtroom. In contrast to the witness Ciambelli,
however, O'Connor did testify that while viewing a photo-
graphic array at the Revere police station, he had selected a
"couple of photographs" that he thought were photographs
of the gunman. O'Connor's subsequent testimony, and that
of Officer Gannon, clarified that the first photograph se-
lected by O'Connor was of the defendant, whom O'Connor
had unequivocally identified as the gunman at the time he
viewed the photographic array.[3] The testimony of both
witnesses was admitted as substantive evidence of prior
identification by O'Connor. The defendant would have us
rule that, according to the principles discussed with refer-

---

[3] Officer Gannon's testimony was that the second of the "couple of pho-
tographs" selected by O'Connor was of the defendant's companion, iden-
tified as such by O'Connor.

ence to the witness Ciambelli, see part 1(a) *supra,* admission of that evidence for substantive purposes was error.[4]

We disagree, and conclude that by his testimony O'Connor sufficiently adopted his prior photographic identification so that evidence concerning the circumstances and substance of the identification were properly admitted on the issue of identity. See *Commonwealth* v. *Torres,* 367 Mass. at 739; *Commonwealth* v. *Fitzgerald,* 376 Mass. at 408-409. As distinguished from the testimony offered by the witness Ciambelli, O'Connor testified without equivocation that he had viewed photographs for the specific purpose of identifying the gunman and that he had selected the photograph he thought to be of that person. Having offered such testimony, O'Connor could be, and was, cross-examined concerning the prior identification and the circumstances attending it. *Id.* at 409. See *Gilbert* v. *California,* 388 U.S. 263, 272 n.3 (1967). See also Fed.R.Evid. 801(d)(1)(C), and comments thereto, reprinted in Federal Rules, Evidence, at 211 (West 1982); 4 Wigmore, Evidence § 1130 (Chadbourn rev. 1972), and authorities cited in *Commonwealth* v. *Swenson, supra* at 272 n.3. Because O'Connor failed to disclaim the accuracy of his prior identification, we cannot say that evidence of that identification was so lacking in reliability as to be inadmissible. See generally *Commonwealth* v. *Fitzgerald, supra* at 409-410; 4 Weinstein & Berger, Evidence par. 801(d)(1)(C)[01] (1981). Contrast *Commonwealth* v. *Swenson, supra,* and *Commonwealth* v. *Amado, supra,* citing *Gibbs* v. *State,* 7 Md. App. 35 (1969). The weight to be accorded that evidence was for determination by the jury. *Commonwealth* v. *Fitzgerald, supra* at 410, and cases cited.

2. *Grand jury testimony.* Faced by the failure or refusal by the witness Ciambelli to acknowledge any prior photo-

---

[4] The defendant obliquely suggests that the identifications were also in some manner unreliable or made under unduly suggestive circumstances. We have treated those contentions as further argument that O'Connor's identification evidence was admitted in error, but on examination of the record we find nothing to support the argument and conclude that it is wholly without merit.

graphic identification of the defendant, see part 1(a), *supra,* the prosecutor interrogated Ciambelli concerning the substance of his testimony before the grand jury. From the outset, Ciambelli denied any degree of familiarity with his prior testimony, and it is evident from the record that the prosecutor did not confine his references to that testimony for the limited purpose of refreshing Ciambelli's recollection. Specifically, at one point the prosecutor quoted the following question from the transcript of the grand jury proceedings: "Who did you [Ciambelli] identify as the man with the gun?" Ciambelli, who was also reading from the transcript, responded that he had identified the defendant as the gunman before the grand jury. Ciambelli then hastened to discount his grand jury testimony as exaggerated, stating that it had no basis since he didn't know the defendant and had never seen him.

We conclude that it was error to permit the jury, without limiting instructions, to consider Ciambelli's grand jury testimony. See *Commonwealth* v. *Bookman,* 386 Mass. 657, 662-665 (1982).[5] Although that decision raises doubts whether such evidence can be used for substantive purposes, *id.* at 664-665, it cannot, in any event, be used as past recollection recorded unless the transcription of that testimony was "adopted by the witness when the events were fresh in [his or] her mind." *Id.* at 664. Here, there was no indication that Ciambelli had adopted the transcription of his statements while his recollection was fresh. He expressly testified to the contrary, stating that the relevant portion of his grand jury testimony had been both exaggerated and inaccurate. In such circumstances, it is clear that the excerpts

---

[5] Prior to undertaking the line of questioning at issue here, the prosecutor expressly disclaimed any intention of employing the grand jury transcript to impeach Ciambelli's credibility. The only other basis upon which Ciambelli's grand jury testimony could be admissible was as past recollection recorded, see *Bookman* at 662 n.8, 665, and we conclude that defense counsel's general objection to the questioning was sufficient to preserve the judge's ruling under our ordinary standard of review.

of Ciambelli's grand jury testimony should not have been allowed in evidence.[6]

3. *Disposition.* On our review of the record, and particularly in light of the prosecutor's closing argument and the judge's instructions, which called special attention to evidence which should not have been admitted, we conclude that the errors committed were not harmless.

There was sufficient evidence, properly admitted, before the jury to withstand the defendant's motions for required findings of not guilty on each of the three indictments. For the reasons indicated, however, there must be a new trial.

The judgments are reversed and the verdicts set aside.

*So ordered.*

---

[6] We have reviewed the record and conclude that the defendant's contention that a similar error was committed during the testimony of James O'Connor is without basis. No transcript was employed, and any references to O'Connor's grand jury testimony were apparently undertaken with the purpose of refreshing the witness' recollection, and his testimony was in the nature of present recollection refreshed. See *Bookman* at 662 n.8.