Commonwealth vs. Carl Dias & another.[1]

Suffolk. March 7, 2008. - May 21, 2008.

Present: Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Disclosure of identity of informer. *Evidence,* Relevancy and materiality. *Constitutional Law,* Self-incrimination. *Witness,* Self-incrimination.

No error arose from a ruling of a Superior Court judge requiring the Commonwealth to disclose the identity of a confidential informant in a criminal case, where the record before the judge established that the informant's identity would be relevant and helpful to the defense, in that the informant's affidavit, which contained information that both countered the assertions of a key Commonwealth witness and attacked her credibility, appeared to be based on the informant's direct observations of, and interaction with, the witness [468-470]; further, the judge did not err in denying the Commonwealth's subsequent motion for an in camera hearing in order to determine, as a prerequisite to disclosure, whether the informant actually had any information that would be helpful to the defense (as it was clear from the record that the informant possessed such information) [470-472] or whether the informant had a valid privilege against testifying under the Fifth Amendment to the United States Constitution (as the existence of such a privilege would not vitiate the defendants' right to knowledge of the informant's identity and was, in any event, a premature issue until such time as the informant testified) [472-474].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 20, 2006.

The case was reported by *Spina,* J.

*Tara Blackman,* Assistant District Attorney, for the Commonwealth.

*Kenneth I. Seiger* for Carl Dias.

*John M. Goggins* for Louis Whitehead.

CORDY, J. This matter is here on the Commonwealth's petition, filed pursuant to G. L. c. 211, § 3, which a single justice reserved and reported to the full court. The Commonwealth

---

[1]Louis Whitehead.

seeks relief from a ruling of a Superior Court judge requiring it to disclose the identity of a confidential informant, and from the judge's denial of the Commonwealth's subsequent motion for an in camera hearing, prior to that order taking effect, to determine whether the informant had a valid privilege pursuant to the Fifth Amendment to the United States Constitution and, if not, whether the informant had information that would be actually helpful to the defense.

We conclude that there was no error in the judge's order of disclosure. We also conclude that whether the informant has a valid Fifth Amendment privilege as to some or all of the questions that might be asked if he[2] were called as a witness at trial, would not vitiate the defendants' right to the informant's identity. Consequently, the judge's denial of the Commonwealth's request for an in camera hearing on that subject, as a prerequisite to disclosure, was not error. Finally, we conclude that although the judge was mistaken when he ruled that he did not have the authority to hold an in camera hearing for the purpose of determining whether the informant had information that was helpful and relevant to the defense (so as to overcome the Commonwealth's "informant privilege"), such a hearing was unnecessary in this case based on the unambiguous record before him.

1. *Procedural background.* The defendants Carl Dias and Louis Whitehead were indicted on charges of trafficking cocaine in violation of G. L. c. 94C, § 32E (b) (3); violating drug laws within a school zone, G. L. c. 94C, § 32J; and conspiring to violate the drug laws, in violation of G. L. c. 94C, § 40. Immediately prior to the scheduled trial, the defendants filed motions to disclose the identity of a confidential informant, on whose information a search warrant had issued during the course of the investigation leading to their indictments, contending that the informant had information both relevant and helpful to their defense.

In support of their motions, the defendants pointed to the inconsistency between the information attributed to the informant

---

[2]Nothing in the record identifies the informant. The Commonwealth uses "he or she" throughout its brief. As a matter of convenience, we shall refer to the informant as "he."

in the search warrant affidavit and the statement of a prospective witness for the Commonwealth, which they had just received. The witness was Kendra Belisle, who was originally a codefendant in the case, was the target of the search warrant, and had entered a plea agreement with the Commonwealth.

Given the apparent inconsistency between the informant's information and the expected testimony of Belisle, a key Commonwealth witness, the judge allowed the motion and ordered the Commonwealth to disclose the name and address of the informant. Before complying with the judge's order, the Commonwealth filed a motion for an in camera voir dire of the confidential informant.[3] The Commonwealth explained that it was seeking the in camera hearing because the informant had expressed concerns for his safety, and because it had been informed that if the informant was called to testify, he would invoke his Fifth Amendment privilege against self-incrimination. The Commonwealth contended that if the judge conducted an in camera hearing and concluded that the informant either had a valid Fifth Amendment privilege or had no exculpatory information, then disclosure would be unnecessary and inappropriate. The judge denied the Commonwealth's motion, concluding that he did not have the authority to conduct an in camera hearing with regard to the extent of the informant's information, and that there was no Fifth Amendment privilege where the informant had engaged in a "controlled buy" from Belisle and had otherwise waived the privilege as to information given to the police and included in the affidavit. In any event, the judge concluded that based on the record before him, the disclosure of the informant's identity would be relevant and helpful to the defense, and thus required by *Commonwealth* v. *Lugo*, 406 Mass. 565 (1990).

2. *The search warrant, the informant's information, and Belisle's statement.*[4] On October 1, 2004, Detective Manuel Bernardo of the Fall River police department obtained a search

---

[3]The motion requested that the in camera proceeding be held without counsel present or, in the (less preferable) alternative, in the presence of counsel, but only after they had taken an oath not to reveal the identity of the informant if the judge determined the disclosure of his identity to be unnecessary.

[4]We draw these facts from the parties' stipulation of facts, the search warrant affidavit, and the police report of an interview of Kendra Belisle.

warrant for 103 O'Grady Street, apartment 2N. The targets of
the warrant were Belisle and Jared Robinson. The warrant
authorized the police to search the premises (and the persons of
Belisle and Robinson) for "crack" cocaine, other unlawful
substances, drug paraphernalia, drug proceeds, and other evidence
of drug offenses. The warrant was issued based on an applica-
tion that contained an affidavit filed by Detective Bernardo,
which included the following pertinent information.

Within seventy-two hours of the application for the search
warrant, Bernardo received information from a confidential
informant, whom he deemed reliable,[5] that a female named
Kendra Belisle, "who lives at 103 O'Grady Street," apartment
2N, was selling crack cocaine.[6] The informant told Bernardo
that he had purchased cocaine from Belisle "numerous times in
the past." The informant stated that Belisle did not allow purchas-
ers to come to her apartment to buy drugs; instead, she met
them one to two city blocks away from her house. According to
the informant, Belisle did not want anyone to know where she
lived because she wanted to protect her apartment from police
raids. The informant stated that Belisle and Robinson, her boy
friend, lived in the apartment,[7] and that the informant had also
seen three or four other people in the apartment, some of whom
had slept there overnight.

In the affidavit, Detective Bernardo also averred that within
seventy-two hours of his application for the search warrant, the
informant had identified photographs of Belisle and Robinson[8];
and that Bernardo had driven the informant past 103 O'Grady

---

[5]This informant previously had given information to the police that led to
the arrest of two people and the seizure of approximately twenty-five grams
of crack cocaine and a handgun. The informant also participated in a controlled
buy of crack cocaine.

[6]As set forth in his affidavit, Detective Manuel Bernardo had also received
an anonymous call stating that a woman named Kendra Belisle was selling
large amounts of cocaine. The caller stated that Belisle's address was 103
O'Grady Street, apartment 2N, and that she lived there with her boy friend,
Jared Robinson.

[7]The informant described Belisle as a white female, approximately five feet,
five inches tall, 165 pounds, in her mid-twenties, with brown curly medium
length hair. The informant said that Robinson was a black male, approximately
six feet tall, with a slim build and braided hair.

[8]Bernardo retrieved the photograph of Belisle from the registry of motor
vehicles. He learned from the registry that her date of birth was March 13,

Street and the informant stated that Belisle lived on the left side of the second floor at that address. The informant also directed Bernardo to a nearby vehicle that he stated belonged to Belisle.[9]

Additionally, within this same seventy-two hour period, the informant made a controlled purchase of cocaine from Belisle. The informant telephoned Belisle and asked for an amount of cocaine; Belisle told the informant to meet her at a location near the apartment. Bernardo (and an officer assisting him) watched Belisle leave the apartment on O'Grady Street, walk to the nearby meeting point, converse with the informant, touch hands, and then return to the apartment. The informant then gave Bernardo a bag that Belisle had given him in exchange for money. That bag contained cocaine. The affidavit concluded with Bernardo's belief that there was probable cause to believe that Belisle was selling cocaine and storing it at her apartment at 103 O'Grady Street.

Prior to trial, Belisle decided to cooperate with the Commonwealth, and entered a plea agreement.[10] Belisle told the police that although the apartment was in her name, she had sublet it to the defendants in exchange for compensation; that during the two months prior to the raid, the defendants were the ones who lived in the apartment and had engaged in the preparation and sale of crack cocaine; and that she and Robinson lived elsewhere. She went to the apartment to clean it and change her clothes. Explaining why she was at the apartment at the time the search warrant was executed, she stated that, just before the

1978, that she was twenty-six years old, and that her address was 103 O'Grady Street, apartment 2N. He retrieved a picture of Robinson from the police department records. Robinson had been convicted of possession of a class A substance (heroin), a class D substance (marijuana), and a class B substance (cocaine) with intent to distribute.

[9] Bernardo recorded the registration number of the vehicle. He also observed Belisle leave the front entrance of 103 O'Grady Street, go to the vehicle (a Silver Ford station wagon), take items from it, and place them in another vehicle.

[10] In underscoring the legitimacy of the informant's safety concern, the Commonwealth emphasizes that a copy of Belisle's plea agreement was found in the pocket of a person arrested during an unrelated drug raid. The person arrested told the police that she received the copy from her attorney, who represented a fourth codefendant in the present case, who is no longer part of the case. The attorney informed the Commonwealth that he did not provide a copy of the agreement to anyone but his client.

raid, Dias telephoned and asked her to bring him a box of baking soda. When she arrived at the apartment, she saw Dias sell cocaine to another man and Whitehead mixing cocaine with baking soda. She further explained that Dias had given her the two pieces of crack cocaine that were found on her person and that she was to give the cocaine to Robinson. She also told police that Dias would collect everyone's money, pool it, and then buy cocaine. She claimed to have gone with him at least three times to buy cocaine: Dias would telephone her, and she would pick him up and drive him to meet another male, from whom he would buy the cocaine. Whitehead would meet the customers on a nearby street to sell cocaine. She denied any other participation in the defendants' activities beyond purchasing cocaine occasionally.

3. *Discussion.* a. *Disclosure order.* The government's privilege not to disclose the identity of an informant has long been recognized in this Commonwealth. *Commonwealth* v. *Madigan,* 449 Mass. 702, 705-706 (2007). *Worthington* v. *Scribner,* 109 Mass. 487, 488 (1872).[11] The privilege serves a "substantial, worthwhile purpose in assisting the police in obtaining evidence of criminal activity." *Commonwealth* v. *Madigan, supra* at 706, quoting *Commonwealth* v. *Douzanis,* 384 Mass. 434, 441 (1981). See *Roviaro* v. *United States,* 353 U.S. 53, 59 (1957). Competing with the privilege is the defendant's entitlement to exculpatory and other information material to his defense. *Commonwealth* v. *Madigan, supra,* and cases cited. Where disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro* v. *United States, supra* at 60-61. See *Commonwealth* v. *Lugo,* 406 Mass. 565, 570 (1990). The issue of disclosure "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [privileged] testimony,

---

[11]The "informant's privilege is in reality the Government's privilege to withhold from disclosure the identity of [informants]." *Roviaro* v. *United States,* 353 U.S. 53, 59 (1957).

and other relevant factors." *Roviaro* v. *United States, supra* at 62. See *Commonwealth* v. *Lugo, supra* at 570-571. Part of the balance involves weighing the potential danger to the informant. *Commonwealth* v. *Youngworth,* 55 Mass. App. Ct. 30, 33 n.5 (2002), and cases cited. *Commonwealth* v. *Johnson,* 365 Mass. 534, 544 (1974).

Cases that have required disclosure have done so "on a standard of materiality or something roughly akin thereto."[12] *Commonwealth* v. *Lugo, supra* at 571, and cases cited. See *Commonwealth* v. *Johnson, supra* at 547 ("helpful"); *Commonwealth* v. *Ennis,* 1 Mass. App. Ct. 499, 501-502 (1973) ("helpful," "material," "relevant," "important"). "As to materiality, we have said that the 'proper inquiry' concerns 'whether disclosure would have provided material evidence needed by the defendant for a fair presentation of his case to the jury.' " *Commonwealth* v. *Madigan, supra* at 706, quoting *Commonwealth* v. *Lugo, supra* at 571-572, 574. A defendant must "make some offering so that the trial judge may assess the materiality and relevancy of the disclosure to the defense, if that relevancy is not apparent from the nature of the case and the defense offered thereto. In other words, the defendant has some obligation to show an exception to the privilege that the informer remain anonymous." *Commonwealth* v. *Swenson,* 368 Mass. 268, 276 (1975).

Here, the record before the motion judge established that the informant's identity would be relevant and helpful to the defense. The information in the affidavit, provided by the informant, bore directly on the issues of who was storing and selling drugs out of Belisle's apartment, and conflicted with the anticipated testimony of Belisle, on which the Commonwealth's theory of the defendants' culpability in part relies. Belisle has downplayed her role and told the police that the defendants (not she and her boy friend) were living in her apartment and were running the drug selling operation. The informant's information,

---

[12]As we noted in *Commonwealth* v. *Lugo,* 406 Mass. 565, 571 (1990), courts have distinguished between a demand for disclosure at a pretrial hearing, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is a defendant's ultimate guilt or innocence. Here, the defendants' guilt or innocence is at issue.

which the police found to be reliable at the time they sought the search warrant, is to the contrary and appears to be based on the informant's direct observations of, and interaction with, Belisle (and her apartment), including her participation in the controlled purchase. While the Commonwealth may be able to reconcile these apparent inconsistencies at trial, the inconsistencies are sufficiently remarkable to be relevant and helpful to the defendants, both in countering Belisle's assertions and in attacking her credibility. In other words, when assessed in reference to the offenses charged and the related evidence, the informant's information is material.

The Commonwealth emphasizes the informant's fear for his safety and that of his family. This is a valid factor to weigh in the balance, *Commonwealth* v. *Johnson, supra* at 544 (protection of informer is factor to consider in disclosing identity), and we do not discount it. However, because the informant's information and observations are relevant and helpful to the defense, disclosure of his identity is necessary for a fair presentation of the cases at trial. See *Roviaro* v. *United States, supra* at 60-62; *Commonwealth* v. *Madigan, supra* at 711 ("Certainly such information may place at risk the safety of the individual, once she is revealed as an informant. . . . [H]owever, [the Commonwealth may not] withhold information concerning any informant where, as here, the information is material to the defense and potentially exculpatory"); *Commonwealth* v. *Lugo, supra* at 570-572. See also *United States* v. *Ordonez,* 737 F.2d 793, 809 (9th Cir. 1984) (if trial judge believed that disclosure of informant's identity would have been highly relevant and might have been helpful to defense, it was error of constitutional dimension to deny disclosure simply because of potential danger to informant). The judge's findings and order of disclosure are well supported in the record and by our precedents.

b. *In camera hearing.* The Commonwealth seeks a further hearing, in camera, to determine whether the informant actually has any information that would be helpful to the defense.[13] If not, the Commonwealth contends, his identity would not need to be disclosed.

---

[13]The Commonwealth had sought an in camera hearing to determine both this question and whether the informant had a valid Fifth Amendment privilege. We discuss the latter issue *infra.*

When it is not clear from the record whether disclosure is required, Federal courts have used in camera proceedings to determine whether the information sought is relevant and whether, under the *Roviaro* balancing test, disclosure should be ordered. See *United States* v. *Panton,* 846 F.2d 1335, 1337 (11th Cir. 1988) (when record unclear, in camera hearing "will best accommodate the competing governmental and individual interests"); *Gaines* v. *Hess,* 662 F.2d 1364, 1369 (10th Cir. 1981) ("Under these circumstances, an in camera hearing is the appropriate procedural vehicle for determining whether the informant's testimony would lend significant credence to [the] defense"; court noted that "other circuits have approved the in camera hearing as a device to ensure proper application of the *Roviaro* test").[14]

Massachusetts law is similar in this respect. See *Commonwealth* v. *Douzanis,* 384 Mass. 434, 443 (1981) ("except in an in camera proceeding," judge should not require "disclosure of the identity of an informant . . . without some reason apparent on the record"); *Commonwealth* v. *Lugo,* 23 Mass. App. Ct. 494 (1987), *S.C.,* 406 Mass. 565 (1990) (court vacated ruling on motion in limine and directed trial judge to hold in camera hearing to determine whether defendant was entitled to disclosure of surveillance location analogous to informant privilege, when it was unclear on record whether judge acted within discretion in granting Commonwealth's motion). See also *Commonwealth* v. *Hernandez,* 421 Mass. 272, 276 (1995) (same). In *Commonwealth* v. *Madigan,* 449 Mass. 702, 705 (2007), the judge, on reviewing an affidavit, initially granted the defendant's request for information concerning whether an individual was working for the police as an informant, finding that the information, if it existed, might be considered exculpatory. Mass. R. Crim. P. 14 (a) (1) (A) (iii), as appearing in 442 Mass. 1518 (2004) (requiring prosecution to disclose exculpatory facts). When the

---

[14]Some courts consider in camera hearings the favored procedure in disclosure cases. See, e.g., *United States* v. *Spires,* 3 F.3d 1234, 1238-1239 (9th Cir. 1993) (in camera hearing "favored" procedure, and holding that, while in camera proceeding need not be held in every case where defendant requests identity of informant, when defendant makes minimal threshold showing that disclosure could be relevant to defense, hearing is required; judge may not determine that disclosure is not required, without hearing, at that point).

Commonwealth moved to reconsider, the judge granted the motion to the extent of conducting an in camera inspection of the Commonwealth's information. *Commonwealth* v. *Madigan, supra* at 705. After the hearing, the judge again ordered disclosure. *Id.* As to the judge's decision to conduct an in camera hearing, this court noted that "[w]here disclosure of a confidential informant is at issue, '[t]he use of an in camera procedure has been recognized in the Commonwealth, by other courts, and by commentators.' " *Id.* at 705 n.6, quoting *Commonwealth* v. *Douzanis, supra* at 441-442.

In a case where it is not clear from the record that disclosure of an informant's identity would provide something material to the defense, a judge may hold an in camera hearing to assist in making that determination.[15] While the judge was mistaken in concluding that he did not have the authority to hold such a hearing, none was necessary because it was clear from the record that the informant possessed information relevant and helpful to the defense.

4. *Fifth Amendment privilege.* The Commonwealth also contends that the judge should have held an in camera hearing to determine whether the informant had a valid Fifth Amend-

---

[15]The nature of the in camera hearing is left to the discretion of the judge, who may, in light of the particular facts, determine whether the presence of counsel is necessary or appropriate. *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494, 504 (1987), *S.C.*, 406 Mass. 565 (1990) (discussing advantages and disadvantages of counsel's presence at in camera hearings).

Massachusetts cases addressing the question whether counsel should be present have come to different conclusions depending on the context. In *Commonwealth* v. *Douzanis*, 384 Mass. 434, 442 n.13 (1981), in the context of a hearing contending the truthfulness of information contained in a search warrant affidavit, under *Franks* v. *Delaware*, 438 U.S. 154 (1978), where the defendant's guilt was not at stake, "we [thought] the judge in his discretion may permit the prosecutor to be present." In *Commonwealth* v. *Amral*, 407 Mass. 511, 525 (1990), the Court determined, also in the *Franks* context, that the judge may conduct the in camera hearing without counsel, or he may permit the prosecutor, but not defense counsel, to attend the hearing. Counsel who was not to be present could submit a limited number of questions for the judge to ask. *Id.* The substance of the hearing is left to the judge's discretion. *Id.* In *Commonwealth* v. *Crawford*, 410 Mass. 75, 79-80 (1991), we affirmed counsel's entitlement to be present at a hearing to determine an informant's reliability, in the circumstances of that case, and found that an in camera interview with a police officer attended by neither defense counsel nor the prosecutor was inappropriate.

ment privilege against self-incrimination, before ordering the informant's identity disclosed to the defense. We disagree.

Whether the informant could assert a valid Fifth Amendment privilege if called as a witness at trial is a distinct issue from whether the informant's identity must be disclosed before trial because it is apparent that he has information relevant and helpful to the defense. While calling the informant as a witness might be one way of putting that information to good use in this case, it is not the only way, and it may not be as useful to the defense as knowledge of his identity before trial. The ability to connect the information in the affidavit to the name of a person could prove to be invaluable to the effectiveness of the cross-examination of Belisle, and seriously affect the credibility of her testimony. It might also assist in highlighting other weaknesses in the Commonwealth's case, and in opening up an avenue of defense investigation and preparation for the cross-examination of other witnesses called by the Commonwealth (including Detective Bernardo), not otherwise apparent.[16]

Further, the issue whether the informant has a valid Fifth Amendment privilege is premature. The informant has not yet been called to testify. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *Hoffman* v. *United States*, 341 U.S. 479, 485-486 (1951). This is a guarantee against testimonial compulsion. *Id.* at 486. The Fifth Amendment privilege may be invoked in criminal or civil matters when an individual's *testimony* creates a possibility of criminal prosecution. *Kastigar* v. *United States*, 406 U.S. 441, 444 (1972). *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 794 (1982). If the informant is called to testify in these cases, the issues — whether the informant has a valid claim of privilege as to some or all of the questions that might be asked, and the type of hearing the judge should hold — would be addressed at that time. We note only that, contrary to the apparent conclusion of the motion judge, a person does not waive his or her Fifth Amendment privilege by speaking with the police, *Taylor* v. *Commonwealth*, 369 Mass. 183, 191, 193 (1975) (statements given to police officers in ordinary

---

[16]The informant might also agree to be interviewed by defense counsel or a defense investigator.

course of investigation do not result in waiver of privilege as to subsequent in-court, under-oath testimony). In addition, a witness may not rely on a "bald assertion of his privilege if the circumstances do not clearly indicate a possibility of self-incrimination," *Commonwealth* v. *Martin*, 423 Mass. 496, 502 (1996); and a judge has the authority to hold an in camera hearing to determine whether a Fifth Amendment privilege assertion is valid. *Id.* at 504.

5. *Conclusion.* We see no error or abuse of discretion in the judge's disclosure order or in his denial of the Commonwealth's motion for an in camera hearing further to assess whether the informant possessed helpful and relevant information or a valid Fifth Amendment privilege as a prerequisite to disclosure.

The case is remanded to the single justice for entry of a judgment consistent with this opinion.

*So ordered.*