NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13323

COMMONWEALTH  vs.  SHAMIA WHITFIELD.


Suffolk.     March 6, 2023. - May 19, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Practice, Criminal, Discovery, Disclosure of identity of
     informer.  Privileged Communication.  Evidence, Informer,
     Privileged communication, Relevancy and materiality.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on August 31, 2022.

     The case was reported by Wendlandt, J.


     Kathryn Sherman, Assistant District Attorney, for the
Commonwealth.
     John P. Warren for the respondent.
     Luke Ryan, Molly Ryan Strehorn, & Joshua M. Daniels, for
Massachusetts Association of Criminal Defense Lawyers, amicus
curiae, submitted a brief.


     GEORGES, J.  This matter is before us on a reservation and

report by a single justice of the Commonwealth's petition for

relief pursuant to G. L. c. 211, § 3.[1]  The Commonwealth challenges a Boston Municipal Court judge's order allowing the defendant's motion for discovery and requiring the Commonwealth to disclose significant, albeit redacted, information about a confidential informant (informant).[2]  The Commonwealth relied on information from the informant to obtain a search warrant that led to the seizure of firearms from the defendant's apartment, as well as the defendant's arrest on charges of unlicensed possession of firearms and ammunition.  The Commonwealth maintains that the information ordered to be disclosed is protected under the confidential informant privilege.  See Commonwealth v. Bonnett, 472 Mass. 827, 847 (2015), S.C., 482 Mass. 838 (2019), citing Roviaro v. United States, 353 U.S. 53, 60 (1957); Mass. G. Evid. § 509 (2019).

We conclude that, if disclosed, the information requested in the defendant's motion for discovery would, in effect, reveal the informant's identity.  In addition, the defendant does not dispute that disclosure of the informant's identity would give

_____

[1] Although the Commonwealth commenced this action by filing a petition in the county court, for convenience we refer to the respondent as the "defendant."

[2] This case is one of two that we decide today involving a petition for relief pursuant to G. L. c. 211, § 3, concerning the potential disclosure of information that has been asserted as protected by the informant privilege.  See Commonwealth v. Gandia, 492 Mass.    (2023).

rise to a concern for the informant's safety.  Accordingly, the Commonwealth's invocation of the informant privilege was proper, and the burden shifted to the defendant to show that the requested information was material and relevant to her defense.  See Bonnett, 472 Mass. at 847.  We further hold that the defendant failed to make the required showing here; accordingly, the motion judge abused her discretion in allowing the defendant's motion for disclosure.[3]  The case is remanded to the county court for entry of a judgment reversing the order allowing the defendant's motion for discovery and remanding the matter for further proceedings consistent with this opinion.[4]

1.  Background.  We summarize the facts as found by the motion judge, supplemented with undisputed facts from the record.[5]  See, e.g., Commonwealth v. Johnson, 481 Mass. 710, 712, cert. denied, 140 S. Ct. 247 (2019).  On April 16, 2019,

---

[3] The defendant conceded at oral argument that, if this court determined that the Commonwealth properly invoked the informant privilege and that the standard set forth in Commonwealth v. Bonnett, 472 Mass. 827, 846-848 (2015), S.C., 482 Mass. 838 (2019), applied to the defendant's discovery motion, the defendant had failed to meet her burden under that standard.  For the reasons discussed infra, we would reach the same conclusion with or without the defendant's concession.

[4] We acknowledge the amicus brief of the Massachusetts Association of Criminal Defense Lawyers.

[5] The defendant's motion, with the assent of the Commonwealth, to expand the record to include the transcripts of eight hearings that took place in the Boston Municipal Court, is allowed.

Detective Brian Ball of the Boston police department (BPD), acting on information provided by a "carded"[6] informant, filed an application for a search warrant, with a supporting affidavit, to search the defendant's person and her home for firearms. The informant had told Ball and BPD Detective John Burrows that, within the previous thirty days, the informant had seen the defendant in possession of two black rifles on multiple occasions. One of the rifles was an AK-47-style weapon with a wooden stock and curved, "banana" feeding device, and the other was described as long with a straight feeding device. The informant had seen the weapons at the defendant's house and had observed them being loaded and unloaded with live ammunition. The informant identified the defendant from a photograph.[7]

---

[6] A "carded" informant is one whose identity is known to commanding officers and whose cooperation with law enforcement has been approved. BPD's use of informants is governed by rule 333 of the BPD Rules and Procedures. This rule requires BPD to keep certain records on each confidential informant, including payment receipts, debriefing reports, confidential informant cards, photographs, informant working agreements, and criminal history checks of the informant. With the exception of the confidential informant card and the informant working agreement, all other BPD records concerning a confidential informant must refer to the informant only by a code substituted for the informant's name. Boston Police Department Rules and Procedures, Rule 333: Confidential Informant Procedures (Mar. 1, 2006).

[7] The photograph is described in Ball's affidavit as a "sanitized booking photo[graph]." The record before us does not indicate exactly which measures were taken to "sanitize" the photograph at issue here. However, we note that the term

The warrant affidavit also included some information about the informant's reliability.  Ball averred that, on at least three prior occasions, the informant had provided reliable information to the BPD that had led to numerous arrests for firearms and drug violations.  Examples of these arrests were included in the warrant affidavit.  The informant also had informed police of the location of an individual who was wanted on a default warrant, leading to that individual's arrest.  In addition, the informant had conducted controlled purchases of drugs, which led to the seizure of drugs and firearms.  Ball averred that the informant has maintained regular and prompt contact with investigators during multiple BPD investigations.

In describing the informant's prior involvement in BPD investigations, Ball purposefully omitted certain information to protect the identity of the informant.  Specifically, Ball omitted the precise dates of the investigations and the identities of those arrested, as well as the seizures that the informant's information had produced.  Ball stated that the defendant, who was then under BPD investigation, might know one or more "individuals who have come into contact with" the informant as a result of the informant's cooperation with BPD.

---

"sanitized," when used in these contexts, indicates that information identifying the photograph as a booking photograph has been removed.  See Commonwealth v. Cruz, 445 Mass. 589, 594 (2005).

The informant requested anonymity due to safety concerns. Ball averred that disclosure of the informant's identity "would pose an undue risk to [the informant's] safety" and would place the informant in "imminent danger of bodily harm or death." Ball also averred that such disclosure would harm the BPD's reputation for protecting informants and, thus, would hinder the BPD's investigations and its ability to recruit cooperators. An assistant clerk of the Boston Municipal Court issued the warrant on April 16, 2019.

BPD officers executed the search warrant on April 22, 2019. After advising the defendant of the Miranda warnings, officers inquired whether there were any firearms in the house. The defendant responded that the guns were under her bed and a crib in her bedroom. Officers recovered a Model 9 rifle and a twelve-gauge shotgun from the bedroom, and loose ammunition and shotgun shells from several locations in the apartment.[8] The defendant was arrested and charged with two counts of possession of a firearm without a firearm identification (FID) card, G. L. c. 269, § 10 (h), and one count of possession of ammunition without an FID card, G. L. c. 269, § 10 (h).

Citing Mass. R. Crim. P. 14 (a) (1) (C), as appearing in 442 Mass. 1518 (2004), and Mass. R. Crim. P. 17, 378 Mass. 885

---

[8] At the time of the warrant's execution, no one present in the apartment was licensed to possess firearms or ammunition.

(1979), the defendant filed a motion seeking discovery of "rewards and promises" offered to the informant, and documents and information related to the informant's participation in other criminal investigations. Specifically, the defendant requested "all documents" held by the BPD involving its recruitment of the informant and its work with the informant on any prior occasion, including debriefing reports. These included any documents regarding whether the informant was paid or made agreements with any law enforcement agency, and any related documentation. The defendant also requested a "complete history" of the informant's involvement with "any law enforcement agency," including case names, docket numbers, and the outcomes of those cases. In addition, the defendant sought disclosure of the dates of warrants to which the informant had contributed, and copies of any police reports that pertained to the informant.

The defendant argued that the requested information was necessary because the warrant lacked indicia of the informant's reliability, credibility, and veracity. See Commonwealth v. Amral, 407 Mass. 511, 520 (1990), citing Franks v. Delaware, 438 U.S. 154, 155-156 (1978) (establishing defendant's entitlement to in camera hearing where defendant asserts facts that cast doubt on veracity of material representations in warrant affidavit concerning reliability of confidential informant).

The defendant specifically did not request the identity of the informant, positing further that "the requested information should in no way reveal the identity of the informant." The Commonwealth filed an opposition, arguing that the requested information was protected by the informant privilege, see Commonwealth v. Dias, 451 Mass. 463, 468 (2008), and that its disclosure effectively would identify the informant.

At a nonevidentiary hearing on the defendant's motion, the prosecutor offered to provide the defendant with receipts of any monetary transactions between the BPD and the informant. The prosecutor asserted, however, that the Commonwealth was not obligated to disclose the requested information if there were a "safety concern." He also observed that, to overcome the privilege, the defendant bore the burden of showing that the information was material and relevant, and necessary to the administration of a fair trial. Defense counsel maintained that the information sought in the discovery motion corresponded with the information that the BPD was required to retain as part of its collaboration with any informant and offered to sign a protective order. He also observed that he believed the motion was appropriate, given the difficulty defendants confront in prevailing on motions to suppress.

The judge subsequently issued written findings of fact and a decision allowing the motion in full. In the decision, the

judge recognized that, "[a]ssuming that the Commonwealth has asserted the informer's privilege, the defendant must first make a showing that the discovery sought is both 'material and relevant.'" The judge then concluded that the information the defendant sought was "relevant and material to the issue of probable cause" and was "essential" for defense counsel's "preparation for a zealous defense . . . regarding his client's anticipated [m]otion to [s]uppress." See Amral, 407 Mass. at 518.

The factual findings on which the judge's decision was based included the following: (1) "[t]he application for [the] search warrant contained no particularity about [the informant's] track record"; and (2) "[d]isclosure of BPD Rule 333 information, via code number, will not reveal the true identity of [the informant]." With these factual findings in mind, the judge reasoned that the Commonwealth's offer to disclose records of payments received by the informant was "not sufficient to test the veracity of the affidavit and/or the reliability of [the informant]." The judge concluded that because disclosure of the information requested, using the informant's code number, would not reveal the informant's identity, such disclosure properly balanced the informant's safety with the defendant's rights to due process and to a zealous defense.

The Commonwealth moved for reconsideration. A decision on that motion was delayed for approximately one year, due to scheduling issues resulting from the COVID-19 pandemic; the Commonwealth subsequently filed a motion for a decision on its motion for reconsideration. In response to the Commonwealth's request for a decision, the judge ordered defense counsel to submit an affidavit in support of the defendant's original motion for discovery. In the ordered affidavit, defense counsel averred that, inter alia, "[t]he search warrant affidavit does not contain any information regarding [the informant]'s track record or anything that could indicate the veracity of [the informant]," and "[c]ounsel needs this information to prepare for trial."

At a subsequent nonevidentiary hearing, the prosecutor argued that defense counsel's affidavit did not satisfy the "high standard" to establish that the requested information was relevant and material to the defense, and essential to a fair determination of the case. When the judge commented that the prosecutor had provided "no information" about the informant's reliability, the prosecutor responded that the defendant was not permitted to attack the reliability of the informant through a discovery motion and had to file a motion to suppress in order to do so. The judge denied the motion for reconsideration, ordered the Commonwealth to produce all ordered discovery by no

later than September 2, 2022, two weeks from the date of the hearing, and ordered that a show cause hearing be held if the discovery were not produced by that date.

On August 31, 2022, the Commonwealth filed a petition for extraordinary relief in the county court pursuant to G. L. c. 211, § 3.  A single justice then stayed the discovery deadline and reserved and reported the matter to this court.[9]

2.  Discussion.  a.  Standard of review.  We review a decision on a motion for disclosure of information subject to the Commonwealth's assertion of the informant's privilege for an abuse of discretion.  See Commonwealth v. D.M., 480 Mass. 1004, 1006 (2018).  Where, as here, the motion judge conducted a nonevidentiary hearing, and the record before the judge consisted only of documentary evidence, such as the warrant affidavit, "'we are in the same position as the motion judge' to

_____

[9] Where the single justice has exercised her discretion to reserve and report the matter, we proceed to adjudicate the merits.  See Martin v. Commonwealth, 451 Mass. 113, 119 (2008).  However, we reiterate that neither this court nor a single justice thereof "is required to review, pursuant to G. L. c. 211, § 3, the substantive merits of every confidential disclosure order."  Commonwealth v. D.M., 480 Mass. 1004, 1004 n.2 (2018).  "To the contrary, disclosure of information relating to confidential informants and witnesses does not in and of itself constitute exceptional circumstances" warranting exercise of this court's extraordinary power of superintendence. Id.  No party, including the Commonwealth, should expect this court to exercise its extraordinary powers of general superintendence lightly.  See Commonwealth v. Richardson, 454 Mass. 1005, 1005-1006 (2009), citing Commonwealth v. Narea, 454 Mass. 1003, 1004 n.1 (2009).

assess the documentary evidence put forward by the parties." Johnson, 481 Mass. at 715, quoting Commonwealth v. Monroe, 472 Mass. 461, 464 (2015). See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018) ("We now affirm the principle that an appellate court may independently review documentary evidence, and that lower court findings drawn from such evidence are not entitled to deference").

"An appellate court's review of a [motion] judge's decision for abuse of discretion must give great deference to the judge's exercise of discretion; it is plainly not an abuse of discretion simply because a reviewing court would have reached a different result." Vazquez Diaz v. Commonwealth, 487 Mass. 336, 344 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Concluding that there was an abuse of discretion does not equate to a finding that "the judge was not conscientious or, for that matter, not intelligent or honest." Vazquez Diaz, supra at 345, quoting L.L., supra. Rather, "a judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." Vazquez Diaz, supra, quoting L.L., supra.

b. Informant privilege. "The government's privilege not to disclose the identity of an informant has long been

recognized in this Commonwealth." Bonnett, 472 Mass. at 846, quoting Dias, 451 Mass. at 468. See Mass. G. Evid. § 509. The privilege is meant to "encourage 'every citizen' in his [or her] 'duty . . . to communicate to [the] government any information which [the citizen] has of the commission of an offense against its laws." Commonwealth v. Swenson, 368 Mass. 268, 276 (1975), quoting Worthington v. Scribner, 109 Mass. 487, 488 (1872). "While the privilege is not absolute, it should be respected as far as reasonably possible consistent with fairness to a defendant" (quotation and citation omitted). Commonwealth v. Shaughnessy, 455 Mass. 346, 353 (2009). The scope of the informant privilege is limited by its underlying purpose: "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." Roviaro, 353 U.S. at 60.

The informant privilege thus "extends to information that would tend to reveal the identity of the informant" (citation omitted). United States v. Tzannos, 460 F.3d 128, 140 (1st Cir. 2006). As such, the privilege "not only protects the release of the name of the informant but also forbids the disclosure of details that would in effect identify the informant" (emphasis in original). Commonwealth v. John, 36 Mass. App. Ct. 702, 706 (1994). See Commonwealth v. Douzanis, 384 Mass. 434, 436 n.4 (1981) (disclosure of dates, times, and locations of all

meetings between defendant and informant, as well as copies of all written and oral statements made by informant, in effect would identify informant); John, supra at 703, 707 (same).

The analysis of whether an informant's identity should be kept confidential under the privilege or disclosed "may best be described as generally occurring in two stages." Bonnett, 472 Mass. at 846. In the first stage of the analysis, a court makes a preliminary determination whether the Commonwealth properly asserted the informant privilege, see Mass. G. Evid. § 509(a)(1), and if so, whether the defendant has met his or her burden to challenge the Commonwealth's invocation of the privilege by establishing "an impermissible interference with [the defendant's] right to present a defense." Bonnett, supra. The informant privilege may be asserted by the Commonwealth where the Commonwealth otherwise would be required to provide an informant's identity to a defendant as part of its discovery obligations under Mass. R. Crim. P. 14. See id., quoting Roviaro, 353 U.S. at 59. Should a defendant wish to overcome the informant privilege, the defendant bears the burden of challenging the Commonwealth's assertion. Dias, 451 Mass. at 464. "We have characterized a defendant's obligation at this juncture as 'relatively undemanding,' but it does require the defendant to articulate a basis sufficient for the judge to 'assess the materiality and relevancy of the disclosure to the

defense, if that relevancy is not apparent from the nature of the case.'"  D.M., 480 Mass. at 1006, quoting Bonnett, supra at 847.

Only if both the Commonwealth and the defendant have met their burdens in the initial stage should a judge then proceed to the second stage of the analysis, where the judge must "decide whether the informant's identity and concomitant information are sufficiently 'relevant and helpful to the defense of an accused' that it must be disclosed."  Bonnett, 472 Mass. at 847, quoting Dias, 451 Mass. at 468.  This determination necessitates a balancing of "the public interest in protecting the flow of information against [the defendant's] right to prepare his [or her] defense."  Bonnett, supra at 847-848, quoting Roviaro, 353 U.S. at 62.  The inquiry at the balancing stage must be case-specific:  "[w]hether a proper balance renders nondisclosure erroneous must . . . tak[e] into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  Roviaro, supra.  Where disclosure (1) is sufficiently "relevant and helpful to the defense of an accused" or (2) "is essential to a fair determination of a cause, the privilege must give way."  Dias, supra, quoting Roviaro, supra at 60-61.

c.  Application.  i.  Commonwealth's assertion of informant privilege.  The defendant argues that because she did not seek disclosure of the informant's name, and because the judge found that disclosure of the information requested would not reveal the informant's identity, the informant privilege does not apply.  She contends that the judge's order therefore should be reviewed in the context of a motion judge's broad discretion to order discovery under Mass. R. Crim. P. 14.[10]  We disagree.  Rather, based on the record before us, we conclude that the extensive amount of information requested by the defendant would, in effect, reveal the informant's identity such that the informant's privilege is applicable to this case.[11]

---

[10] The defendant does not refute the Commonwealth's assertion that the informant's safety would be in danger if his or her identity were revealed.  Compare D.M., 480 Mass. at 1005 (disclosure of identity of informant with current and prior involvement in firearms cases would endanger informant).

[11] In concluding that the informant privilege has been properly asserted here, where the information requested would in effect reveal the informant's identity, we do not set forth a rigid test or add any additional step to the analysis laid out in Bonnett, 472 Mass. at 846.  Rather, consideration of whether disclosure of requested information, short of an informant's name and address, might place an informant in danger has always been part of a case-specific inquiry into whether the informant privilege is properly invoked.  See Commonwealth v. Amral, 407 Mass. 511, 526 n.11 (1990) (privilege properly asserted where disclosure of requested information "would be tantamount to revealing the informant's identity"); Commonwealth v. Douzanis, 384 Mass. 434, 436 n.4 (1981) (applying privilege where requested information "would in effect identify the informant" and permitting judge on remand to consider "whether full or

Here, the search warrant issued to search the defendant's home and person relied on the informant's assertions that the informant had seen the defendant load and unload firearms inside her home within the thirty days prior to the application for the warrant. The expansive nature of the ordered discovery would risk providing details that would allow the defendant, or others familiar with her home, to retrace their activities over the preceding thirty days and discern the identity of the informant on that basis. See Commonwealth v. Benlien, 27 Mass. App. Ct. 834, 838 n.7 (1989) (date of controlled purchase remained undisclosed because of "need not to pinpoint the encounter and thus impair the anonymity of the informer"). Moreover, the informant has provided information leading to the arrest of three other individuals for firearms offenses, the execution of a search warrant that located firearms and drugs, and the arrest of one person on a default warrant. The disclosure of the details of those events -- their dates, locations, and the names of the involved parties -- would permit those familiar with the informant to piece together a detailed picture of the

_____

partial disclosure of the demanded information would in fact reveal the informant's identity"); Commonwealth v. John, 36 Mass. App. Ct. 702, 706 (1994) ("the privilege not only protects the release of the name of the informant but also forbids the disclosure of details that would in effect identify the informant" [emphasis in original]). See also Roviaro v. United States, 353 U.S. 53, 60 (1957) (contemplating whether contents of communication would "tend to" reveal informant's identity).

informant's assistance to law enforcement, effectively identifying the informant.[12]

Given our conclusion that the requested disclosure would in effect disclose the informant's identity, and the parties' agreement -- appropriate in the circumstances of this case -- that disclosure of the informant's identity would place the informant in danger, we conclude that the Commonwealth properly met its burden to invoke the informant privilege.

ii. Defendant's burden to make showing of materiality and relevancy. Because the Commonwealth properly invoked the informant privilege, the burden shifted to the defendant to "challeng[e] the assertion of the privilege as an impermissible interference with . . . her right to present a defense." Bonnett, 472 Mass. at 846. While a defendant's burden at this stage is "relatively undemanding," see D.M., 480 Mass. at 1006, quoting Bonnett, supra at 847, "[c]ases that have required disclosure have done so on a 'standard of materiality or

---

[12] As noted supra, the motion judge's contrary finding, based solely on the documentary evidence, is due no deference. See Commonwealth v. Johnson, 481 Mass. 710, 714-715, cert. denied, 140 S. Ct. 247 (2019); Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018). We note only that, to the extent the motion judge relied solely on the substitution of a code for the informant's name in concluding that disclosure of the requested evidence would not reveal the informant's identity, her reliance was inconsistent with the fact-specific inquiry into the practical implications of disclosure that this stage of the analysis demands. Compare Douzanis, 384 Mass. at 436 n.4; John, 36 Mass. App. Ct. at 706-707.

something roughly akin thereto," Dias, 451 Mass. at 469, quoting Commonwealth v. Lugo, 406 Mass. 565, 571 (1990). "As to materiality, we have said that the 'proper inquiry' concerns 'whether disclosure would have provided material evidence needed by the defendant for a fair presentation of his case to the jury.'" Dias, supra, quoting Commonwealth v. Madigan, 449 Mass. 702, 706 (2007).

A defendant must make "some offering" so that the judge "may assess the materiality and relevancy of the disclosure to the defense." Dias, 451 Mass. 469, quoting Swenson, 368 Mass. at 276. "In other words, the defendant has some obligation to show an exception to the privilege that the informer remain anonymous." Dias, supra, quoting Swenson, supra. A distinction exists between a demand for disclosure for pretrial purposes, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is the defendant's guilt or innocence. See Lugo, 406 Mass. at 571. While the standards of disclosure for pretrial purposes are "more demanding" than those applicable when disclosure is sought for trial purposes, in either instance a defendant nevertheless must offer some evidence to support the materiality and relevancy of disclosure. See D.M., 480 Mass. at 1006.

The defendant maintains that the requested discovery was material and relevant to an anticipated "Franks/Amral" motion

challenging the accuracy of the information in the warrant. See Amral, 407 Mass. at 520, citing Franks, 438 U.S. at 155-156. As she did at the motion hearing, the defendant argues on appeal that she demonstrated her material need for the requested information by stating that there was "no track record" supporting the informant's reliability and no other means of verifying the information in the affidavit. The Commonwealth argues that the defendant made an insufficient showing that the requested information was material and relevant to a pretrial defense or to a defense at trial.

Although we have no doubt that the motion judge engaged in a good faith effort to weigh the interests involved, as presented to her by the parties, we conclude that the judge erred in finding that the defendant made a sufficient showing of materiality to satisfy her burden in the initial stage of the analysis under Bonnett, 472 Mass. at 847, and accordingly, the judge abused her discretion in ruling that disclosure was warranted, whether for pretrial or trial purposes.

To be entitled to a Franks/Amral hearing, a defendant must "by affidavit assert[] facts which cast a reasonable doubt on the veracity of material representations made by the affiant concerning a confidential informant." Amral, 407 Mass. at 522. The defendant did not assert any case-specific facts in her original motion, at either hearing, or in the requested

affidavit that cast a reasonable doubt on the informant's veracity or the facts in the affidavit.  Indeed, although the defendant's motion cited to Amral, supra, the record does not indicate that the defendant meant to assert that the search warrant affidavit was untruthful -- only that the possibility of its untruthfulness existed, due to the lack of information about the informant's "track record" and information about the investigation itself.  However, "[m]ere suspicion that there was no informant, or that the informant's 'reliability' credentials have been misstated, or that his information was other than as recited by the affiant," as was the case here, does not rise to the level of an articulated challenge that warrants a Franks/Amral hearing.  Id.  See Douzanis, 384 Mass. at 439 (requiring something more than "naked claim" that affiant fabricated information before ordering Franks/Amral hearing).  The defendant's suggestion that the requested information may bear on an eventual Franks/Amral defense, without more, was not a sufficiently articulated basis that would have allowed the judge to assess the materiality and relevancy of the disclosure.  See John, 36 Mass. App. Ct. at 706 ("A discovery motion, by itself, seeking information about facts contained in the warrant affidavit, is not sufficient to overcome [the warrant's] presumption of validity").

Finally, the brief, vague, and conclusory assertion in defense counsel's affidavit that the requested information was "needed to prepare for trial" does not pass muster for a showing of materiality. A judge "cannot be required to assess the need for disclosure . . . without some guidance" as to the "scheme of the defense." Swenson, 368 Mass. at 276. Although the defendant's burden at this stage is "relatively undemanding," see Bonnett, 472 Mass. at 847, it was not met here, and the motion judge abused her discretion in concluding otherwise when faced with this evidentiary record.[13]

3. Conclusion. We hold that the information requested by the defendant would in effect disclose the informant's identity and that the defendant failed to show that the requested information was relevant and material to her defense. Accordingly, the matter is remanded to the county court for entry of a judgment reversing the motion judge's order allowing the defendant's motion for discovery and remanding the matter to

---

[13] Because we find that the defendant has failed to meet her burden, albeit a "relatively undemanding" one, at the initial stage of the analysis under Bonnett, 472 Mass. at 847, "[w]e need not speculate about what the results of a second-stage Roviaro balancing exercise might have been." Id. at 850.

the Boston Municipal Court for further proceedings consistent with this opinion.[14]

So <u>ordered</u>.

---

[14] On remand, the motion judge may entertain a request, if any is made, for compromise relief that might allow disclosure of some lesser amount of information "while minimizing danger to the [informant]" (citation omitted). <u>Bonnett</u>, 472 Mass. at 850. We express no view as to the appropriateness of any potential compromise. Rather, it is within the motion judge's discretion to consider any such request in the first instance, consistent with the legal principles discussed <u>supra</u>.